IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CALVIN DALE SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:19cv00660 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CRYSTAL LARGE, *et al*.., | ) | By: Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendants. | ) | |

Before the Court are two motions for summary judgment, one on behalf of defendant Dr. Charles Hurlburt[1] (ECF No. 21) and one on behalf of defendant nurse Crystal Large (ECF No. 23). Because Smith has presented no evidence that he was ever treated by Dr. Hurlburt, his motion will be granted. Because Smith cannot demonstrate that nurse Large was deliberately indifferent to his medical needs, her motion will also be granted.

I.

A.

This case arises from events that occurred while plaintiff Calvin Dale Smith was an inmate at the Duffield Regional Jail ("Duffield"). Smith alleges that the defendants were deliberately indifferent to his medical needs, specifically his need for treatment of kidney stones. Smith has a history of kidney stones and began to suffer from them again while incarcerated. (*See* ECF No. 28-2 at 3–4, 22.) He began suffering serious pain and filing requests

---

[1] As the docket reflects, the complaint is against a Dr. Hurl Burt. However, the defendant's actual name is Charles Hurlburt. (*See* ECF No. 21.) The clerk is ordered to update the docket accordingly.

for sick calls with the medical staff at Duffield beginning in May of 2019 but alleges nurse Large only gave him aspirin. (*See* ECF No. 12 at 3.) At his medical appointments and via medical grievances, he repeatedly requested x-rays to determine whether he had kidney stones, as well as an appointment with an outside urologist. (*See id.*) Smith alleges that Nurse Large denied his requests and informed him that he could not have a urologist appointment because he was "from out of state." (ECF No. 12 at 2.) This alleged pattern of pain and denial of treatment continued for months until, Smith says, a doctor on staff—defendant Dr. Hurlburt—called Smith into his office at night and told him that the jail could not do anything without Smith's records from past surgeries, so he should "stop crying" and making complaints. (*See id.*)

Smith alleges that his serious medical issues came to a head a few weeks later when he passed a large kidney stone and bled for three days. (*See id.*) He says the medical staff were aware of this and did nothing other than provide him with gauze pads. (*See id.*) On October 15, 2019, five months after his initial complaint, Smith was seen by an outside urologist.

B.

Smith's medical records and affidavits submitted by the defendants tell a different story. Dr. Hurlburt alleges that he never saw or treated Smith (*see* ECF No. 22-1 at 1), an assertion that is supported by Smith's medical records (*see* ECF Nos. 28-1, 28-2). Dr. Hurlburt also categorically denies any nighttime encounter with Smith, testifying that he does not work at night and never told Smith to "stop crying and putting in sick calls and complaints." (*See* ECF No. 22-1 at 2.)

Nurse Large's affidavit states she only saw Smith once, on June 13, 2019. (*See* ECF No. 24-1 at 2.) At that appointment, she increased Smith's Tylenol dosage and submitted a request for him to be seen by an outside urologist. (*See id.*) Nurse Large's affidavit also explains that, while Smith is correct that it took an extended period to secure him an appointment with a urologist, this was due to repeated cancellations by the urologist's office, not any actions by the defendants or other jail officials. (*See id.* at 3.) Both of these statements are confirmed by Smith's medical records, which show a request for an appointment submitted on June 14 and then note repeated cancellations and reschedulings by the urologist's office. (*See* ECF No. 28-1 at 13, 47.) The records also show that during the relevant time period, Smith had 13 sick-call appointments. (*See* ECF No. 28-2 at 1–8.) Only one of the appointments, on June 13, was with nurse Large. At that appointment, she noted her assessment that Smith was suffering from flank pain and had a history of kidney stones. (*See id.* at 5.) After the appointment, she increased Smith's Tylenol dosage and requested an appointment with an outside urologist. (*See id.*) Smith's medical records show that he did not see or interact with Nurse Large again. (*See id.* at 1–8; *see generally* ECF No. 22-1 at 1–62.) However, they do show that Large prescribed Smith a straight catheter after his May 25 sick-call appointment with another nurse. (ECF Nos. 24-1 at 2; 28-2 at 5.)

Looking past nurse Large, Smith received treatment for his kidneys from other professionals at the prison. Of the 13 sick calls in the relevant time period, five were in response to complaints about pain from his kidneys and one was a follow-up from a previous visit regarding his kidneys. Those appointments occurred on May 5, May 14, May 17, June 13, July 15, and October 9, 2019. (*See* ECF No. 28-2 at 1–8.) At the May 5 appointment, a nurse

proscribed ibuprofen and ordered a urine test to check for kidney stones. (*See id.* at 7.) On May 14, he was prescribed Tylenol for his pain and Flomax to aid in the passing of any stones. (*See id.*) The May 17 appointment occurred before Smith's prescriptions could be filled (*see id.* at 5), but was followed shortly by a prescription for a straight catheter. The June 13 appointment was his appointment with Large, after which she concluded Smith needed to be seen by an outside urologist. (*See id.*) The final two appointments were checkups as all parties awaited the urology appointment. (*See id.* at 1, 3–4.)

## II.

Under Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. *Celotex*, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If that burden has been met, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Glynn*, 710 F.3d at 213 (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. The nonmoving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" *Glynn*, 710 F.3d at 213 (quoting *Anderson*, 477 U.S. at 252). The nonmoving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990) (citing *Anderson*, 477 U.S. at 248). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. *World-Wide Rights Ltd. P'ship v. Combe, Inc.*, 955 F.2d 242, 244 (4th Cir. 1992).

### III.

"[T]he Eighth Amendment's prohibition against cruel and unusual punishments [extends] to the treatment of prisoners by prison officials and forbids the unnecessary and wanton infliction of pain." *Hill v. Crum*, 727 F.3d 312, 317 (4th Cir. 2013) (internal quotations

omitted). Deliberate indifference to serious medical needs constitutes such unnecessary and wanton infliction of pain and therefore violates the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prevail on an Eighth Amendment claim that prison officials were deliberately indifferent to his serious medical needs, a plaintiff must prove two things: "that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry." *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017).

Demonstrating serious medical need is straightforward. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Demonstrating deliberate indifference is substantially more difficult. A prison official is only deliberately indifferent to a medical need if he or she "knows of and disregards an excessive risk to [the plaintiff's] health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Meeting this standard requires a plaintiff to show both that the official was actually aware of the risk of harm, and that the official recognized that his or her actions were insufficient. *Iko*, 535 F.3d at 241. "Put differently, the plaintiff must show that the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed *and* drew that inference." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (emphasis in original).

IV.

Smith has not shown that Dr. Hurlburt was deliberately indifferent to his serious medical needs because he has not shown that Dr. Hurlburt was ever involved in his medical

treatment. Smith's only allegation involving Dr. Hurlburt is that he summoned Smith for a private conversation wherein Dr. Hurlburt allegedly berated him for "crying" about his medical needs. Even if this incident occurred (which is doubtful given the evidence in the record), it was entirely unrelated to Smith's treatment for kidney stones. Smith does not allege that Dr. Hurlburt was involved in his treatment, and the relevant medical records show that Dr. Hurlburt made no decisions about Smith's treatment. (*See* ECF No. 28-2 at 1–8.) In other words, there is no evidence in the record that Dr. Hurlburt took any action—or was responsible for taking any action—with respect to Smith's kidney stones. Smith's medical records show that other doctors and nurses were responsible for his care and reflect no involvement by Dr. Hurlburt. Without evidence that Hurlburt made decisions (or was responsible for making decision) with respect to his treatment, Smith cannot make out an Eighth Amendment claim.

The same is true with respect to nurse Large, although to a lesser extent. Smith's medical records show that nurse Large was involved with his treatment, but that her involvement was minimal and took the form of attempts to aid Smith in his quest for medical attention. As noted before, Smith's medical records reflect that he only had one interaction with nurse Large about his kidney stones, a fact her affidavit corroborates. (*See* ECF Nos. 28-2 at 4, 24-1 at 2–3.) Nurse Large's affidavit also states she was involved in Smith's treatment on one other occasion when she ordered a catheter after hearing that he complained to other medical staff about his inability to urinate. (*See* ECF No. 24-1 at 2.) Smith alleges that nurse

Large also treated him on May 14 and July 16, but his medical records show that both appointments were with different medical professionals.[2] (*See* ECF No. 28-2 at 3, 5–6.)

Smith provides two response to the records. First he asserts he "at least saw [Large] twice once on Jun 13 and also on or about 6/13/19." (ECF No. 26 at 2.) He also reiterates that the medical records reflect multiple instances of the two interacting, but they do not. (*See* ECF No. 29 at 4.)[3] These conclusory assertions do not advance Smith's case and are insufficient to create a genuine dispute over the facts in the record.

Smith has not alleged any facts showing that nurse Large disregarded any of his medical needs, much less that she was deliberately indifferent to them. "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). There are no such exceptional circumstances here. Nurse Large is a nurse practitioner who saw Smith at one appointment and who seems to have aided him in getting exactly what he wanted. Smith's only arguments to the contrary are either mischaracterizations of record evidence or reiterations of his naked assertions that defendants have failed to disclose relevant evidence.

Even if Smith could show that Large was aware of facts from which she could infer a "substantial risk of serious harm" to his health, he must also show that she drew the inference that his health was at substantial risk. *Scinto*, 841 F.3d at 225. Put another way, he must show

---

[2] The medical records do not show an appointment on July 16, 2019, but do reflect an appointment on the previous day.

[3] Smith also alleges that the record is missing various documents that vindicate his claim. The court has already addressed this argument and ordered the disclosure of all relevant records. (*See* ECF No. 27.) Defendants complied with the order and there is no indication that the record remains incomplete.

that she knew her actions with respect to his kidney stones were insufficient. Such knowledge can be demonstrated either through direct evidence of actual knowledge or through circumstantial evidence, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). There is nothing in the record establishing that nurse Large had such knowledge or drew such an inference. There is certainly no direct evidence of deliberate indifference; neither Large's affidavit nor her notes from Smith's appointment evince a belief that he was in any acute distress. (*See* ECF Nos. 24-1 at 2–3; 28-2 at 4–5.) Nor is there any circumstantial evidence that Large was aware or should have been aware of any significant risk to Smith's health. None of the medical professionals who saw Smith noted acute distress of any kind in his medical records. (*See* ECF No. 28-2 at 1–8.) The notes from his July 15 appointment actually reflect that Smith himself denied having any serious complaints associated with his kidney stones. (*See id.* at 3–5.)

The only statements in the record claiming that Smith was in dire need of medical attention are his grievances, which are insufficient to show deliberate indifference for two reasons. First, there are no allegations in the record that Large was privy to any of Smith's grievances other than the ones that led to her June 13 appointment with him. (*See* ECF No. 29 at 2, 4 (attributing grievance responses to a grievance officer).) Second, the grievances were all followed by appointments finding no acute distress. Thus, even if the record showed that nurse Large failed to treat his serious medical condition, the record contains neither evidence showing Large was actually aware of a serious risk to Smith's health nor evidence from which

a factfinder could infer that she was aware of such a risk. For these reasons, Nurse Large is entitled to summary judgment.

V.

Because it is undisputed that Dr. Hurlburt made no decisions with respect to Smith's medical treatment, his motion for summary judgment will be granted. Likewise, because the undisputed evidence shows that defendant nurse Large had limited involvement in Smith's treatment and what involvement she had took the form of granting Smith's requests, her motion for summary judgment will also be granted.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to Smith and all counsel of record.

**ENTERED** this 8th day of February, 2021.

>  */s/ Thomas T. Cullen*
> HON. THOMAS T. CULLEN
> UNITED STATES DISTRICT JUDGE